UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEW ENGLAND REINSURANCE
CORPORATION

               Petitioner,

v.

WESTCHESTER FIRE INSURANCE COMPANY
(as successor to International Insurance Company)
(ACE USA Co.),

               Respondent.

CIVIL ACTION NO.
1:04-CV-11398 WGY

**RESPONDENT, WESTCHESTER FIRE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS RESPONSE TO NERCO'S PETITION TO CONFIRM ARBITRATION AWARD AND WESTCHESTER'S RESPONSE TO NERCO'S MOTION FOR ORDER SEALING THE RECORD**

**I.   INTRODUCTION**

Respondent, Westchester Fire Insurance Company ("Westchester") does not object[1] to a simple, one-line Confirmation Order that incorporates the underlying arbitration award by reference and states that that award is confirmed.[2] Indeed, both parties have been, and continue to, perform fully in accordance with the underlying arbitration award.

On the other hand, to the extent that NERCO asks this Court to issue a Confirmation Order that reveals more information regarding the subject arbitration award and clarification,

---

[1] As stated in paragraph 1 of Westchester's Response to NERCO's Petition to Confirm Arbitration Award, NERCO has mis-stated the basis for subject matter jurisdiction in this matter. *See, e.g., Perpetual Securities, Inc. v. Tang*, 290 F.3d 132 (2d Cir. 2002) (holding that independent grounds for subject matter jurisdiction (other than the Federal Arbitration Act itself) must exist before a federal district court may address a petition to confirm); *Wisconsin Com'r of Ins. v. California Reinsurance Management Corp.*, 819 F. Supp. 797 (E.D. Wis. 1993) (same). Westchester does not dispute that this Court would have subject matter jurisdiction over this petition under 28 U.S.C. § 1332 if it had been properly asserted in NERCO's petition, since the parties are diverse and the amount at issue in the underlying arbitration was in excess of $75,000.

[2] Such an Order could read, for example, "Pursuant to 9 U.S.C. § 9, having reviewed the respective papers submitted by New England Reinsurance Corporation ("NERCO") and Westchester Fire Insurance Company ("Westchester"), this Court hereby confirms the arbitration award dated July 25, 2003, as clarified by the Panel's August 1, 2003 e-mail, in the June 30-July 2, 2003 arbitration between Westchester and NERCO."

and/or to issue a Confirmation Order without permanently placing under seal at least portions of the record in this matter, Westchester respectfully objects to and opposes such a course of action as an improper effort to circumvent a clear agreement reached at the start of the underlying arbitration to keep all aspects of the arbitration – including the final award – confidential. As discussed in greater detail below, Westchester, NERCO, and the Panel members in the underlying arbitration specifically agreed before the arbitration hearing to maintain permanently the confidentiality of that arbitration. The resulting Confidentiality Agreement was reached with the parties' full knowledge of the potential that they, and/or their respective affiliates, might face the same repetitive issues in the future as existed in that arbitration. Nevertheless, the parties did not carve out any exceptions in the Confidentiality Agreement for the future use of that arbitration award in future dispute resolution proceedings involving either the same parties or their respective affiliates, as some parties do under those circumstances. Now, however, NERCO is having buyer's remorse with respect to that Confidentiality Agreement, and <u>is looking to use this confirmation process to circumvent that Confidentiality Agreement</u>. Clearly, such a use of the confirmation process is improper and unjust, and the Court should not allow itself to be party to that. Indeed, the District Court for the Northern District of Illinois recently rejected just such an effort, refusing to include in a confirmation order the findings in the underlying arbitration award as requested by one of the parties, because that would have violated the confidentiality agreement between the parties in the underlying arbitration. *See Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, 2004 WL 1376409 at *2 (N.D. Ill. June 17, 2004).

Accordingly, while Westchester does not oppose an confirmation order that merely incorporates the underlying arbitration award by reference, Westchester respectfully urges this Court to refrain from issuing a more detailed Order, and to permanently redact from the public

DOCS_PH 1607456v1

record references to the particular findings of the Arbitration Award and the arguments made in the underlying arbitration, and place under permanent seal the original documents containing such references, in order to prevent any improper use of papers filed in, arguments made in, or orders or awards issued in, this action or the underlying arbitration.

## II.  BACKGROUND FACTS

Westchester and NERCO participated in a reinsurance arbitration hearing in Boston, Massachusetts from June 30 through July 2, 2003. Before that hearing began, the parties and the arbitration panel agreed to maintain permanently the confidentiality of that arbitration and any awards issued therein. In particular, the parties and the arbitration panel executed a "standard form" Confidentiality Agreement, which provides in relevant part:

> 2. Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, Westchester Fire Insurance Company and New England Reinsurance Company agree that all briefs, depositions, and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Agreement will remain in effect even after conclusion of the arbitration proceedings.
>
> 3. Disclosure of Arbitration Information may be made: ... (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award;.... In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submission of Arbitration Information to a court shall be sealed.... In all contexts, both parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

*See* Declaration of David Weiss ("Weiss Decl.") at ¶4 and Exhibit A thereto.

At the time the parties entered into this Confidentiality Agreement, both parties were aware that the issues to be addressed in the arbitration were repetitive issues likely to arise between the parties, and/or their respective affiliates, in the future. In such circumstances, some parties to an arbitration decide to modify the "standard form" Confidentiality Agreement, adding language to paragraph 2 that would specifically permit the use of Arbitration Information in future dispute resolution proceedings between the parties and/or their respective affiliates. *See* Weiss Decl. at ¶5. In connection with the underlying arbitration, however, the parties never agreed to such an exception to the Confidentiality Agreement, and no such language was added to the Confidentiality Agreement. *See* Weiss Decl. at ¶5 and Exhibit A thereto.

Following a three-day hearing, the panel in the underlying arbitration issued an award on July 25, 2003, and retained jurisdiction to clarify that award if necessary. Following inquiries by the parties regarding one aspect of that award, the Panel issued an e-mail on August 1, 2003 clarifying that aspect of the award. *See* Weiss Decl. at ¶6 and Exhibit B thereto. (The July 25, 2003 award and the August 1, 2003 clarification are hereafter collectively referred to as the "Arbitration Award").

Since then, as NERCO has acknowledged, both parties have fully complied with the terms of the Arbitration Award. *See* Weiss Decl. at ¶7.

NERCO filed the instant Petition for Confirmation on June 18, 2004, and allegedly attempted service of the Petition on Westchester by mailing it to the Legal Department at the Division of Insurance in Massachusetts on June 22, 2004.

During a conversation with NERCO's counsel on July 2, 2004 regarding another dispute between NERCO and a Westchester affiliate involving the same repetitive issue as in the underlying arbitration, counsel for Westchester came to understand that NERCO might attempt

to confirm the Arbitration Award in order to circumvent the Confidentiality Agreement in the underlying arbitration. In response to that, Westchester's counsel (among other things) reminded NERCO's counsel that if NERCO ever filed a petition to confirm, NERCO was obligated under the Confidentiality Agreement to file such a petition under seal and to take the steps necessary to limit disclosure of the Arbitration Award and other Arbitration Information from the underlying arbitration. At the time, Westchester's counsel was unaware that NERCO had already filed a petition to confirm, or that such a petition had been filed not under seal. *See* Weiss Decl. at ¶8. Later that day, NERCO for the first time attempted to comply with its obligations under the Confidentiality Agreement, and belatedly filed a Motion to Seal the Record in this matter.

### III.  ARGUMENT

#### A.  An Order Detailing the Terms of the July 25, 2003 Arbitration Award Is Not Necessary to Meet the Objectives of the Confirmation Process

The process of confirming an arbitration award is a summary statutory proceeding that is intended to give the arbitration award the full force and effect of a judgment of the court, in order to enable either party to seek judicial relief to enforce that award. *See, e.g., Higgins v. United States Postal Service*, 655 F. Supp. 739, 742 (D. Maine 1987); *Barbier v. Shearson Lehman Hutton, Inc.*, 752 F. Supp. 151, 159 (S.D.N.Y. 1990) *aff'd in part, rev'd in part on other grounds*, 948 F.2d 117 (2d Cir. 1991); 9 U.S.C. §§ 9, 13.

In the instant case, all that would be necessary to meet the intended goal of the confirmation process is a one-line order stating that the Arbitration Award is confirmed. In the event that either party subsequently breached the terms of that Arbitration Award – and there is no indication that that will happen here, given that both parties have fully abided by the Arbitration Award for the past year – the other party could then bring an action in court to

enforce the award as confirmed, citing the simple Confirmation Order and the Arbitration Award (which would still need to be filed under seal, as required by the Confidentiality Agreement).

On the other hand, including in a Confirmation Order further details regarding the substance of the Arbitration Award is **not** necessary to render that Arbitration Award a judgment enforceable by a court. Simply put, this Court could incorporate the Arbitration Award by reference, without spelling out its particular findings, and still achieve the intended goal of resolving NERCO's petition for confirmation.

### B.  An Order Detailing the Terms of the July 25, 2003 Arbitration Award Would Only Serve NERCO's Improper Goal of Circumventing the Confidentiality Agreement in the Underlying Arbitration

Given that there is no reason with respect to the underlying arbitration to issue an a confirmation Order detailing the terms of the Arbitration Award, the only logical reason NERCO would have for asking this Court to issue such a detailed Order is to create an alternate path by which NERCO can circumvent the Confidentiality Agreement and disclose that award in other contexts, such as the other pending dispute between NERCO and a Westchester affiliate. Clearly, this Court should not be party to such an inequitable use of the judicial system.

The Confidentiality Agreement could not be clearer. The Arbitration Award may not be disclosed or used except in the limited contexts identified in the Confidentiality Agreement. Nothing in the Confidentiality Agreement – notwithstanding the parties' knowledge at the time that the issues in the underlying arbitration were likely to recur between the parties and/or their respective affiliates and the availability of language to account for that – creates an exception for using the award in future dispute resolution proceedings between the parties and/or their respective affiliates. And, even in the limited contexts in which the Confidentiality Agreement permits limited disclosure – such as a petition to confirm an award – the parties expressly agreed to make good-faith efforts to limit such disclosures to request that the record of a petition to

confirm be sealed. *See* Weiss Decl. at ¶4 and Exhibit A thereto. In short, the parties clearly agreed at the outset of the underlying arbitration was to be a one-off proceeding, with no opportunity (for either party) to disclose or use the results of that arbitration in the future.

Circumventing such a confidentiality agreement is not the intent of the award confirmation process. Indeed, in a factually similar situation, the Northern District of Illinois recently rejected a party's request for a detailed confirmation order, holding that such an order would be inconsistent with the confidentiality agreement entered in the underlying arbitration. *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, 2004 WL 1376409 at *2 (N.D. Ill. June 17, 2004). In that case, the Court was presented with two alternative forms of a confirmation order: one that would simply have stated that Trustmark was obligated to pay $366,330, and one that would have added language regarding the Panel's findings concerning the amount owed. Noting that the confidentiality agreement in that case (as here) required that the parties would seek to have the arbitration award filed under seal if there was a motion to confirm, the Court concluded that the second form of order would violate the confidentiality agreement by disclosing the content of the subject arbitration award. *See id.* Likewise in this case, to the extent the Court issues an Order, any such Order should not disclose the particular findings of the arbitration award given the clear terms of the Confidentiality Agreement in the underlying matter. Rather, the Court should seek to minimize any such disclosure by merely incorporating the Arbitration Award by reference and stating that that award is confirmed.

C.  **The Court Should Permanently Seal the Record in This Matter.**

"The decision as to access to [judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 599, 98 S.Ct. 1306, 1313, 55 L.Ed.2d

7

570 (1978). The public interest in access stems from the premise that public monitoring of the judicial system fosters the important values of "quality, honesty and respect for our legal system." *Siedle v. Putnam Investments*, 147 F.3d 7, 9-10 (1st Cir. 1998) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)). However, while the common law presumes a right of public access to judicial records, that right is not unfettered, and access may be denied based on the circumstances of the case. *See, e.g., id.* at 10.

The Second Circuit's decision in *DiRussa v. Dean Witter Reynolds* provides a clear road map on how to resolve, under circumstances factually similar to the instant case, the balancing test between the public's interest in access to court-filed documents and the parties' interest in maintaining the previously-agreed confidentiality of an underlying arbitration proceeding. *See DiRussa v. Dean Witter Reynolds*, 121 F.3d 818 (2d Cir. 1997), *cert. den.* 522 U.S. 1049, 118 S.Ct. 695, 1392 L.Ed. 639 (1998). In that case, the parties had agreed in the underlying arbitration that 1) the documents produced in the arbitration would only be used in the context of that arbitration, and 2) in the event any such produced documents were filed with a court, they would be filed under seal to protect the confidentiality of those documents. *See id.* at 826. When one party filed a petition to modify the arbitration award, and included throughout its papers copies of and references to documents that were the subject of the confidentiality agreement, the District Court placed the entire file, except for the court's opinions and orders, under seal. *See id.* at 820-21, 826. The Court noted the general principle that good cause must be shown for denying public access to judicial files, and concluded that that burden was met under these circumstances. *See id.* at 827. On appeal of that ruling, the Second Circuit affirmed that decision, finding that the District Court did not abuse its discretion given the facts before it. *See id.* at 827-28.

The instant case likewise calls for at least a partial sealing of the record. NERCO and Westchester entered into a clear confidentiality agreement, in which they expressly agreed that the Arbitration Award would be confidential and that in the event a motion to confirm was filed, any reference to the Arbitration Award would be filed under seal. *See* Weiss Decl. at ¶4 and Exhibit A thereto. The ensuing arbitration was conducted privately, with the expectation that the agreed confidentiality would be maintained by both parties regardless of the outcome. Thus, the parties have a legitimate interest in maintaining the confidentiality of those proceedings.

Private, confidential arbitration proceedings are common in the reinsurance industry, and the confidentiality of such proceedings are in fact encouraged by industry organizations like ARIAS-US and the Reinsurance Association of America. *See* ARIAS-U.S., *Practical Guide to Reinsurance Arbitration Procedure* § 3.8 Comment C ("It is generally agreed throughout the industry that reinsurance arbitrations are and should be confidential in most circumstances, even absent the parties' complete agreement"); Reinsurance Resolution Dispute Task Force, *Procedures for the Resolution of U.S. Insurance and Reinsurance Disputes* §§ 7.1, 7.2 ("All meetings and hearings of the Panel are private and confidential to the Parties…. The Panel and the Parties shall use their best efforts to maintain the confidential nature of the arbitration proceedings and the Award…"). Undoing the parties' Confidentiality Agreement in the instant case by not sealing references to the confidential Arbitration Award would severely chill the arbitration process in the reinsurance industry, in which use of the "standard form" confidentiality agreement used by NERCO and Westchester is encouraged and, in fact, common.

On the other side of the balancing scale, although the public arguably has an interest in ensuring that this Court administer NERCO's petition to confirm the Arbitration Award fairly, that interest is neither advanced nor hindered based on access to the underlying Arbitration

Award itself or references to its particular findings or the parties' arguments in the underlying arbitration. On the contrary, given that there is no dispute between the parties concerning this Court's authority to confirm the Arbitration Award, and given that the Court could confirm that award without identifying its particular findings or the parties' arguments in the underlying arbitration, the particulars of the Arbitration Award and the parties' arguments in the underlying arbitration are not information necessary for the public to assess whether the Court properly administered NERCO's petition to confirm.

In order to satisfy the recognized competing interests, Westchester respectfully requests a partial sealing of the record. NERCO's petition and supporting papers, as well as any subsequently-filed documents or records revealing the particular findings in the Arbitration Award or the parties' arguments in the underlying arbitration would be permanently kept under seal, with a redacted version (redacting the references to the particular findings of the Arbitration Award and the parties' arguments in the underlying arbitration) made available to the public. Likewise, as outlined above, the Court's Confirmation Order would not include any reference to the particular findings in the Arbitration Award, but rather would identify the award by date and parties and declare that award confirmed. In that way, the public's interest in the confirmation process, and the parties' interest in the confidentiality of the underlying proceedings, would both be satisfied and maintained.

### III.   CONCLUSION

Based on the foregoing, Westchester does not oppose this Court confirming the Arbitration Award, provided that 1) the Confirmation Order incorporate the Arbitration Award by reference and state that that award is confirmed, without disclosing the particular findings in that award; and 2) the Court order that all references to the particular findings in the Arbitration

Award and the parties' arguments in the underlying arbitration be permanently redacted from the public record, with the original filings containing such references permanently maintained under seal. Westchester respectfully submits that a more detailed confirmation order, or a denial of the parties' sealing request, would subvert the confidentiality of the Arbitration Award contractually agreed between the parties, and would only aid NERCO's improper use of the confirmation process to achieve just that goal.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Westchester hereby requests oral argument before the Court regarding the petition for rehearing and the motion for sealing.

Respectfully submitted,

WESTCHESTER FIRE INSURANCE COMPANY,

By Its Attorney

_____
David B. Chaffin
B.B.O. # 549245
**HARE & CHAFFIN**
160 Federal Street
Boston, MA 02110
(617) 330-5000

OF COUNSEL:
Thomas A. Allen, Esquire
David Weiss, Esquire
**WHITE AND WILLIAMS LLP**
1800 One Liberty Place
Philadelphia, PA 19103

Dated: July 12, 2004

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by first-hand on 7-12-04